## PAUL USANIS
### vs.
## THE CONNECTICUT LIGHT AND POWER CO.

Court of Common Pleas     Hartford County     File #35341

Present:   Hon. ABRAHAM S. BORDON, Judge.

Pallotti & Covello,             Attorneys for the Plaintiff.

Carmody & Thoms,            Attorneys for the Defendant.

## MEMORANDUM FILED NOVEMBER 30, 1936.

BORDON, J. In this action the plaintiff claims, among other things, an injunction to restrain the defendant from interfering with his use of water connected to his houses and barns from a standpipe on land of the defendant.

It appears that on June 23, 1891, Edward D. and James T. Coogan conveyed to The Windsor Locks Water Company, the defendant's predecessor in title, a strip of land 60 by 80 feet located on the westerly side of West Street in the Town of Windsor Locks. The purchase price for said land was apparently $200, but instead of passing the consideration with the deed, the parties entered into an agreement dated October 28, 1891, (Plaintiff's Exhibit B, whereby the Windsor Locks

Water Co. agreed to permit the Coogans to tap its water pipe at or near the stand pipe, and to draw water therefrom to the house and barns of the Coogans, said right to continue indefinitely but terminable by the Company after five years upon paying the Coogans, their heirs, executors or assigns, the agreed price of $200. By successive conveyances the property of the Coogans passed to the plaintiff and that of The Windsor Locks Water Company to the defendant. The agreement in question was recorded in the Windsor Locks Land Records on October 28, 1891, in Volume 8, Page 319.

At the time the agreement was made, there were two houses on the Coogan land, and, although the agreement gave the Coogans the right to run water only to one house, they actually ran pipes to both houses, and since that time both houses hase been served with water from the standpipe. At various times, before and after the agreement was entered into, the Coogans were officers and directors of The Windsor Locks Water Company. It must, therefore, be assumed that the Company knew that its standpipe had been tapped for both houses, and in the absence of objection on its part, or fraud on the part of the Coogans, neither of which appears in this case, it must be further assumed that the parties contemplated by their agreement that the Coogans were to have this right. It is, therefore, found that the plaintiff's right to tap the defendant's standpipe for both houses and barns on his property exists by virtue of the agreement (Plaintiff's Exhibit B).

The plaintiff now makes two claims in support of his right to continue the water connections to his property:

First, that the covenants in the agreement run with the land, and, therefore, inure to his benefit, and second, that he has acquired a prescriptive right which cannot now, or ever, be defeated.

A careful study of the law and facts as they pertain to this case, leads the Court to the conclusion that a finding in his favor on the first ground would necessitate a finding against him on the second ground. If it is determined that the plaintiff derives his rights from a written instrument which runs with the land it follows that he cannot, simultaneously therewith, acquire prescriptive rights which are inconsistent with existing contractual rights.

The task, then, is to determine which of the two claims applies in the instant case.

The contract, as a whole, runs only to the Coogans, but the part providing for the termination thereof and the payment of the consideration runs to the Coogans, their heirs, executors or assigns. This provision coupled with the right "to draw water indefinitely", indicates an intention of the contracting parties to attach both the benefits and obligations of the contract to future owners of the Coogan property. That being so, it follows that the covenants run with the land and are binding upon both parties.

As the Court has already indicated, the plaintiff cannot claim his rights by prescription and still rely upon the contract. In view of the Court's belief that the rights of the parties were created by the contract, it follows that they can be terminated in accordance with the provisions thereof.

To the plaintiff's Complaint, the defendant filed an Answer and Cross-complaint asking for a declaratory judgment defining the rights of the parties. The Court was prepared to grant a declaratory judgment until it discovered that a declaratory judgment was an exclusive function of the Superior Court. In order to avoid a multiplicity of suits, a conference with counsel was held, as a result of which the defendant withdrew its Answer and Cross-complaint and filed a Substitute Answer tendering the $200. to the plaintiff. The Court is of the opinion that upon payment of $200. to the plaintiff, the defendant has the right to terminate the contract (Plaintiff's Exhibit B), and prevent the plaintiff from further using of the defendant's water.

The Court, therefore, finds the issues on the plaintiff's Complaint and the defendant's Substitute Answer for the defendant. In view of the fact that the defendant filed its Substitute Answer, in which it tenders the $200., after the trial of the case, it ought to pay the costs in addition to the sum tendered.

It is therefore ordered that upon payment of $200. and costs by the defendant to the plaintiff, his right to connect pipes from his houses and barns to the defendant's stand pipe be terminated.